1468 Biomet v. Puget Good morning, Your Honors. I'm Doug Salyers representing Biomet in this appeal of an interparties re-exam. This case presents a straightforward case of the board making two errors. They erred in reading the prior art techniques, prior teachings. Let me start. I parsed these into, let's say, amended claims and unamended claims for my purposes. So why don't we start with the amended claims as a starting point. The PTO has regulations, which I discovered late last night on my computer, that says you may never issue a patent after expiration with amended claims, period. It doesn't matter if they're narrowing, it doesn't matter. We have prior precedent that says you can't narrow, you can't change claim scope. The PTO's regulations, which were subsequent to our precedent, say you can't amend, period. They don't actually incorporate the changing claim scope criteria in. So are those claims, now you tell me what you think happens in light of the fact that the patent is now expired and those amendments are pending before us and were not actually issued on a certificate below. I believe those are moot. That's what the Institute Pasteur case indicated. They're moot, so your request to us would be for us to vacate the issue of the allowance. Correct. The board allowed them. They allowed them at a time when they could have issued and now post the time they can issue. So it's not that we dismiss that portion of the case as moot, we have to vacate the board's allowance. Your Honor, you're correct. I just want to make sure I understand. Yes, Your Honor. We believe that after December 24th, these claims are now un-issuable. So that is a moot issue. The amended claims. What I also found out in the PTO's regs, boy these things have been changing practically daily, it seems, is that when you have an amended claim post expiration that can't issue, suggests that they're allowed to go back and continue to argue for the issuance of the original claims. That's what the PTO's regs expressly say. So, yeah, I know you're looking at me crazy. Yeah, it's crazy. I know, I thought it was crazy too. And neither of you cited it, but we dug this up last night. It's on their website, it's their regs. Okay. And so I guess my question to you is, so technically, I don't know what's going to happen below with the PTO, but its own regs suggest that they may have some right to argue that the original claims. And the examiner, I want to make sure I understand all the facts, the examiner rejected them twice. First he rejected them and then a final rejection. The claims, even with the amendment, but certainly the original claims. Correct? Correct. And so what didn't get appealed to the board was the patentability of the original claims. What only got appealed to board was the patentability of the amended claims. So the board has never spoken on those original claims. Correct. So that's a quagmire I hope we don't have to get into, but I think that the fact that they had to amend them to overcome... Well, you hope you don't have to get into it, and we certainly don't have to get into it. We can just punt this back to the board, but unless they have some compelling reason why these regs are not applicable somehow, I don't know how we can possibly address these amended claims. Neither party's briefed that issue, Your Honor, so I don't know how it will happen below. We did both brief. The amended claims are dead after December 24th. So at that point, I think we're both in agreement on that, but I'll let... You want the reg number while you're sitting there? What's the reg number? Hold on. She said it to me. Don't worry about your time. 37 CFR 1.530J. And Reba, is that the one... I don't have it at my fingertips. Is that the one that says what happens, that amended claims can't issue after expiration, or is that the one that says when it goes back, they consider the original claims? It's an MPEP 2250. If a patent expires during the pendency of a re-exam proceeding, all amendments to the patent claims and all claims added during the prosecution are withdrawn. All subsequent re-exam will be on the basis of the unamended patent claims. So there you go. I don't know that we can resolve that today. I was prepared in my arguments, I was basically going to ignore the amended claims for just that reason, because I believe that there is... Well, I mean, I certainly don't think that we ought to be addressing the validity of the original claims, which wasn't addressed by the board. So I don't know that it would make sense for you... None of us have briefed that issue, and I think they are valid, but if we have to have another round in the PTO, we'll do so. Okay, why don't... I have a question. This is something that is going to come like a fastball to you, probably, or more like a curveball. The unamended claims that you guys are all referring to as unamended, they're technically amended, are they not? Because they went from being dependent claims to independent claims. That is correct. So what does that mean? Well, that's a good point. I believe that could be an amendment, but if your Honor is correct that the language of the claim cannot be amended, then those claims may be disallowed by the PTO because they are amendments. They're turning dependents into independent claims. We have not interpreted that statute that way. We believe that these were unamended claims because they were, in essence, claim 35 was already in the patent. Right. I mean, it's a much closer call, and the other side hasn't argued that they're amended. They have not, nor have we argued that. I mean, we believe that these were original. I mean, they are original claims. There's nothing different. But wouldn't it, in some ways, make sense for us to just send it all back to the PTO to tell us what's amended and what's unamended and what could issue and what can't? My client probably wouldn't like that. I mean, we would like some rulings on some of these claims now since we've briefed it and are hearing it before the court. But this is a regulatory matter, and the other side has not disputed, has not argued that the expiration of the patent makes the issuance of those claims which were amended only by incorporating, making independent dependent claims are forbidden to be issued by that regulation, right? If I'm understanding all the words in your claim, yes, neither side is contesting that after December 24th, the unamended claims cannot issue. And primarily, that would be you that would want to contest that, right? Yes, that's true. I mean, we feel confident that the board made errors, and we want this court to reverse those errors so that you could give them direction about how they should properly construe this claim. And that issue is fully briefed and in front of the court. And I think that would be helpful to the court or the patent board below to hear that now that it is a live issue. And for that reason, I'd like to address the unamended claims and talk about why we think those were misconstrued both in claim construction and in application to the prior art. I think it's interesting that the board made a construction that the patent owner does not support. And that's this complete resection position that the board had to come up with to overcome the prior art. In the red brief, the patent owner says nothing about complete resection. That's a telling statement about how they're not supporting what the board did. And it has fatal consequences for the validity of these claims or the allowability of these claims. Because in order to overcome the Samuelson reference and the protect and the vomit reference, the board had to come up with a construction that instead of just a partial resection across the midline, the entire need... What do you mean by a partial resection across the midline? Do you mean that the saw comes in, say, from the outside and it moves and when it gets to the midpoint, it crosses the midpoint and leaves what would amount to a slit, a slit that you couldn't... I mean, it would still have a top surface and it would... Yeah, you can also cut down from the slit. There are partial resections where you do... I know, but is there anything in the spec of this patent that refers to a partial resection? The only place I see it is in your brief. That's correct. And you concede that because the patent is expired that we're supposed to be using Phillips... Correct. ...not BRI. Correct. Okay, so don't we have to inform our view of this claim language by reference to the specification? The spec provides no guidance on this. I mean, that's an indefiniteness issue that we raised below that the board and the examiner before it did not accept. But because these claims were unamended, they didn't get to the indefiniteness issues. So we don't have a record on the spec support to Your Honor's question. But you can't point me to anything in the spec that discusses a partial resection as opposed to continual reference to a resection. That's correct. There is no reference in the spec to partial resections, I believe. Okay, so what support do you have in the spec for your interpretation of the claim language? You say we never have to get there? I'm simply countering what the board found in its statements. And it's a logic question, or a logical argument, if you will, that the board's findings in terms of what this claim covered would require a resection to go across the midline. And then if it went a little bit past the midline, they realized that that would be captured by the prior art. Because both Samuelson and ProTech had at least two-arm approaches, and you can't cut precisely to a midline. So if you're going, the prior art taught, you would have to at least go a little bit past the midline because you just can't line up these devices at a single point. And indeed, even the patent owner realizes this problem when it came up with its freehand approach that it put into the Red Brief. And in the freehand argument that they made for the first time on appeal, they said, well, there's actually three cuts. The prior art would let you cut from the left and the right, and you get close to the middle, and then you take the cutting guide off, and you just freehand it. The rest of the tail of the media need to be cut off. I'm still trying to get back to, so the board said under BRI, you need a complete resection all the way across, a complete cut all the way across. That's how it read the claim language, correct. And now we're trying to decide whether or not under Phillips, which is by definition more narrow, that it doesn't require that. Correct. So I'm trying to find some place in the intrinsic record that you can point me to that says that. Well, Your Honor, I think you don't necessarily have to go into the intrinsic record. You can just go into the claims themselves. I mean, Claim 35 says that you are simply cutting into glasses here, that you're cutting, creating at least one resected surface. So the surface is not a complete resection. It's describing at least one resected surface. So the claim language itself does not claim a complete resection. And a resected surface is simply some part of the knee that has been resected. You've had the bone removed from it. So we don't need spec support when you just do plain meaning of claim language. So that was the problem that we kept addressing with both the examiner and the board, that the claim language itself, putting aside the spec, claim language itself had all these open-ended terms or less-than-all type of terms. And particularly on the resected surface language in 35, it was simply at least one. So when the board came in later, it changed that claim language from at least one resected surface to a complete resection. And that's error. That's just reading the claims wrong. So I think that regardless of what the spec might say, which candidly has nothing to do with the saws and resection, the entirety of the specification is about a milling approach to create a curvilinear implant structure. There's just not spec support for these claims, but that's an issue that we didn't have to... I mean, there's a lot in the spec about the placement of the guide and how the guide works in relation to the cut. Is there not? There's not. There's figure 18. Well, that's not true. I mean, this is a long specification, and this is a claim that has a number of very specific limitations in it, which is understandable since it started as a dependent claim. So not every single figure would recite every single one of these multiple claims. Well, Your Honor, I'm simply, I guess, referencing what it is that the patent owner relies on. The patent owner only relies on figure 18 for this whole set of claims. That's all it ever talked about. That's the only thing. And the rest of the figures have milling guide limitations about where the milling guide is. Right, but their argument is that those relate to different claims. Of course, it's correct, Your Honor. But, I mean, in short answer to your question, while there may be lots of other inventions in this patent or lots of other disclosures, lots of other embodiments, when you're trying to find support for the claims that issue, the ones that are left, it's only figure 18. And when you look at figure 18, it doesn't tell you whether it's on a medial or a lateral or an anterior side. Those words don't appear in the specification. All you have is a figure. And when you look at the figure, it shows a bone head. It shows something, an L-shaped structure. It shows that L-shaped structure is longer on the front than on the side. But there's no description in figure 18 of figure 18 as being primarily or generally medially, generally laterally, anterior portions. None of that language is in the claims. Can I ask you this? I'm just having a little trouble visualizing this. It seems to me you're making two different kinds of points. One is whether the claim covers situations in which to complete the cut, you come in from more than one side. And the other is this business about what a total or a partial resection is. And suppose for a minute we just hold as a given that at least claim 35 here in the wear-in clause requires the cutting to be done just from the medial side. What constitutes a resection that goes into the lateral side that isn't going all the way across? Because remember, you're not going to get the cut essentially if you go in across the midline and you create a slit into the lateral side now, coming in from the medial, and you cross the midline and you go into the lateral and you now get this slit. In order for that portion to be a resection, you're going to have to at least remove bone above it. Correct. Which you can't do from the side. That's correct. So why doesn't this necessarily or reasonably necessarily imply that cutting a lateral side where a resection is occurring on that lateral side as well as the medial side has to go all the way across? Because there's language in the claim that there's at least one resected surface. Assume with me for this purpose that until you get to the wear-in clause, the language of the claim is completely clear that you can use two different sides, but then not on the wear-in clause. And I'm just trying to focus on this partial versus complete resection. Yes, Your Honor, you make a very good point because when you look at the claim language in the wear-in clause, it's not claiming a resection. It's claiming a cutting. It's exactly Your Honor's point. It says, using the tibial cut guide further includes cutting a lateral side. So Your Honor's notching into a bone That would be covered by that language. It's not a resection of the lateral side. I could simply cut into that side. But you've got to cut into it coming from the medial side. Not necessarily. In the convoluted and contorted way in which this claim is written, it is describing guiding the cutting tool further includes.  in which the cutting is done. So how do you guide it from the medial side to cut the lateral side if you're not going all the way across? You can guide it from any place that is claimed in that structure. And if you look at the claim, the claim says a portion is on the anterior side. The cutting guide is on the anterior side. So if you're using the cutting guide, which is on the anterior side, to cut into the lateral side, you can cut from the anterior side. So the claim has no requirement for the where-in clause that you're cutting from medial to lateral side. It says you are using the cutting guide, which has an anterior portion and admittedly some portion on the medial side. But that actually begs the question about what does the claim also include. When you in the where-in clause use the language generally medially, that does not preclude partially laterally. So the claim can be on all three sides. You can have a generally medially, most of it on the medial side. You have to have a portion on the anterior. And by saying generally as opposed to only, the claim allows a lateral portion to be present. And therefore when you cut into the lateral side, you can cut from any of those three claimed guide positions. So that creates this morass that the board had to I think that we need to, we're four minutes over all of your time. So I think that we need to move on to Mr. Peterson. I'll restore two minutes of rebuttal time. Thank you, Your Honor. Mr. Peterson. Thank you, Your Honor. I apologize for bringing the computer up, but you cited a regulation that I hadn't focused on obviously in this. And so to please the court, I'd like to address your question, and particularly charge more about the regulation. The regulation specifically in 1530J says that no amendment may be proposed for entry. This is an amendment that has already been proposed after the patent has been expired. And so what the office should do, in our opinion, as we took a look at it now that the claim is expired, we made this argument in Section 6 brief that this was going to be an issue. If the claim expired before your decision was rendered, now it has. Now we are in Markman-Phillips construction. We know that we cannot enter those amendments, so what will the Patent Office do on remand? I'm sorry, just to be clear, the next sentence, moreover, no amendment other than the cancellation of claims will be incorporated into the patent by a certificate issued after the expiration of the patent. Certificate hasn't issued yet. That's a future event. It's now any certificate would have to be after the expiration. So doesn't that say no amendment will be incorporated? No, it does not. If you go to MPEP 2682, Roman I, Sub A, they say if you had an independent claim and a dependent claim, both rejected, and then the board confirms the rejection of the independent claim. That argument only goes to what we've been calling the unamended claims. Correct. Okay, that argument says nothing about the ones we're actually on. That one you go to MPEP 2687, Roman III, Sub D, and that one says if it expires, you go back to the unamended version. Right. Well, that's what I said before. So for the independent unamended version. So for the amended claims, right now- They're going to go back. And when you say go back, we have to vacate the allowance because- No, you do not have to vacate the allowance because the procedures that the office has allow the examiner in MPEP 2682, 1A, to rewrite the dependent claim with the amendments to the independent claim gone to rewrite that dependent claim in independent form. That's not the amended claims. We're talking about the amended claims. So even those claims that got amended, you take those amendments out, because they were allowed based on the nature of the limitations and the dependency, they may still be issued. No, no, no, no, no, no. They were allowed based on the amendments. Based on the word only and based on the addition of the word only. The board's decision is very clear. Let me be clear. Okay. The examiner rejected your- The examiner rejected the claims- Twice. Twice. Basic and final. Goes up on appeal to the board. You've got these amendments. Board reverses. Now- On the dependent claims. On the claims that were amended, that are on appeal to us, that I refer to as amended. Maybe it will help you if I tell you which claim numbers I'm talking about. That would be excellent. Thank you, Your Honor. I don't know if we're speaking about the same claims. I will call the amended claims 31, 33, 39 to 40, 45, 47, 53 to 54. Yes. On those claims- Those are the ones that the board reversed, again, on the request for rehearing. Yes. On those claims, you added language like- The only language and the single language and some of those. Yes. Exactly. That language would not be in the claims as rewritten by the examiner into- Which is why the only allowance was to these amended claims. The only allowance was to the amended version. The board did not consider, much less decide anything with regard to the claims before the amendments, which still stand rejected by the examiner and not considered by the board. I don't see how there's anything I can do but to vacate your allowance. Here's the issue. I must respectfully disagree with you. Well, you don't want it to be so. No, I have to disagree with you. We are now in Markman versus Phillips. From the start of this re-exam, the patent owner has continuously argued there is no need for those amendments. They were not substantive. You would like me to decide in the first instance. The board did not decide whether your original claims as not amended are allowable. You're going to ask me in the first instance to decide whether I should overturn the examiner's rejection, which is the only thing that's ever happened, of those original claims absent the amendments you added. You'd like me to do that in the first instance? That is really not a good process to get started. This is why Senator Leahy was right when he said that these inter-party re-exam procedures were entirely inefficient and ineffective. Those amendments were made in 2011, Your Honor. You could have appealed the originally filed claims to the board. You didn't. You appealed only your amended claims to the board. We made the argument because in 2011... Don't interrupt the judge when she's speaking, all right? You only appealed your amended claims. So you never even gave the board a chance, much less asked them to consider the patentability of the originally filed claims, originally issued claims in this re-exam. Because we did not think it was going to take five years to get to this point, Your Honor. And so we assumed, because this is an important thing to understand, we assumed when we made those amendments in 2011, we'd never have an opportunity to argue the original claims under Markman-Phillips. Right. Because we assumed... Maybe that was a fair assumption at the time, but that's not where we are now. I know it's not where we are now. Putting aside the fact that this may have been burdensome on the patent owner, we have limitations on our authority. We can't go back and construe claims that the board has never passed on. But they have construed the dependent claims, and that's what I'd like to get to, because this is a single-sided, half-width cutting guide claim. So now you'd like us to move to what I will call the unamended claims, which are simply dependent claims rewritten in independent form. Yes, so let's take claims 35 to 38 and 49 to 52. Let me ask, though, the same thing I asked the other side. If they're technically amended, if they are amended, I know you guys call them unamended, but why wouldn't those also be subject to the rule that says they can't issue? Well, the requester has admitted that they're unamended in their brief, so I think that they are effectively unamended. But the MPEP provisions allow the examiner, when you're faced with the situation of an independent, rejected, and affirmed, the dependent overturned and reversed for the examiner to rewrite the claim. And that's not an amended claim in the eyes of the Patent Office, would be our position, Your Honors. Okay. That's why it's an unamended claim. So let's focus on those, talk about those, and say where we're at. The partial resection argument. There is a very specific passage in the board's decision which addresses that particularity. The original or the rehearing one? The rehearing decision, page 6, A26. The board is specifically addressing the requester's argument about partial resection. What page of the appendix were you on? I'm sorry. A26. Thank you. When taking the claims at issue in context, it is not merely the fact that the surgeon's blade passed the midline of the bone, but rather, as Your Honor said, but that the entire resection is being done using a guide on one side to complete the resection. Right. I know that the board expressly said that. The question is, is it wrong? No, that is right. So argue about the claim language, why that is the best interpretation. And I gather the other side's textual point is that the wherein clause says you have to cut a lateral side. That language doesn't say you have to make a resection on the lateral side. But if you were to rewrite the claim, the immediately preceding step is implanting the implants by positioning a femoral implant on the at least one fixation surface. You can't do that with a notch. I can't do that with a notch. And that's our argument, Your Honor. That's why it's very reasonable to say it was completed so that you had a fixation surface. You say we're in Phillips. Yes. I have to say that I've never been more frustrated by the absence of citations to the written description. Nobody cites to me anything in the written description except your figure 18. So what are your best textual arguments as it relates to the written description? In this situation, the written description, admittedly, there was a preferred embodiment and a secondary embodiment. The preferred embodiment, the milling embodiment. Most of the description is about that. The description and specification for figure 18 occurs at column 19 and 20 of the 541 patent. But it references other aspects. And I'm going to lead you to one of those different aspects. If you look at figure 4, you will see a side of a cutting guide that's a milling guide that the single-sided version says to be done. And what you will see there is that there is essentially five surfaces on that side. There is a flat surface at the top that says that this is the distal surface. There are two angled surfaces at the side, the chamfer surfaces. And then there's a posterior and anterior surface. When we set in the claim at least one resected surface, what we were providing for was that the guide could do more than just a flat surface. You could create these two angled surfaces on the end of the bone, and then the two up and down surfaces on the end of the bone that the implant sits on. So we did not want to say our guide is only creating the single flat surface on the very distal end of the bone. You could have a guide, and figure 4 is an example, where you also created the angled surfaces and you created the up and down surfaces. That would be at least one resected surface. In that case, there would be five resected surfaces. The claim was written to allow for that. So they're taking the at least one resected surface language and reading it out of context to support that argument that somehow this is ambiguous. There's the distal resected surface that is created completely by positioning the guide on the inside and cutting all the way across to the opposite side, compartment, or portion. The other half of the knee. That's why we call this a single half-guide, half-width cutting. That's the best way to kind of see what's going on here. The reason why this is important, Your Honors, is up until Mr. Haynes' invention, the incision to do a total knee arthroplasty was almost a foot. It went straight midline. You splayed the knee open in order to access a full-width guide. All three of the prior art references that the requester did are the exact same as Burt. They are full-width guides. To do a full-width guide, you needed to make that big incision. For the L-shaped guide that's shown in Figure 18, I can make a three to four-inch incision on the inside of the knee, access it from here, and the hospital stay goes from a week to two days. That's why this is a big deal, Your Honors. My client invented this in the middle 90s long before this ever became what is currently today. The procedure that you would get if you went into the hospital, you're going to get a minimally invasive total knee replacement using a medially accessed cut for the most part, and that's where we're at. So your view is that these unamended claims, like Claim 35, is limited to a single cut which goes all the way across the entire length? Yes, and that's what the Board's decision is. So you'll never assert this claim, for example, against somebody that cuts across the midline medially and then follows in with a cut laterally from the other side to connect up? Using a different guide, which is another part of the Board's decision. Wait, you will assert that against people? No, no, we would not. If they use two guides, two arms on the guides, first you cut this side using this arm, and then you pull that away, and then you throw the other one in, and you cut using that. No, that's the prior arc. That's not what this claim covers. No, but you're arguing here about claim construction, so the claim construction that you're embracing would also preclude finishing the cut freehand. No, it would not, because the argument that the Board made in their decision specifically references that when they said complete, what they meant was finishing the guide with a different cutting guide. Finishing the cut with a different guide. Yes, so page 6 again, A26. Using a single guide without the need to complete the section by using a different cutting guide. We think the claims that issue sufficient, I'm continuing from where you just left off, convey that in each instance the resection is completed by using a single cut guide to cut from one side to the other. In other words, the Patagonia claims describe a complete resection. Well, that was not what we interpreted the Board's decision to mean, and certainly if you go to the other claims in this case admittedly, the amended claims, there is an ability to, what you're doing is cutting across from one side to the other so that you can do this medially placed guide that's less invasive, doesn't interfere with the patella ligament, which there are some other sections in the spec that talk about the patella ligament. They're cited in our brief here. That's where this invention is at. But if you ask us to affirm the Board's decision, then we're affirming that interpretation of the claims. If you read it in its entirety, that entire paragraph about the complete resection, I'm completing the resection. I'm not doing the partial resection by cutting from one side to the other side. If there was a nub that wasn't there, that would not be out of the skill of a person of ordinary skill in the art to finish that freehand because you're going to use the rest of the major surface that you've created to guide the blade to finish that up. In fact, that's what happens in practice is you may get a little bit of nub, some rough edges, something else in there, and they will go in and they'll probably finish it up freehand. We would not be accepting a construction that we feel is limited in a way that requires an absolute complete resection where you can never do freehand to finish up the rough edges. But that would all be... Without a guide. I'm going to speak very imprecisely here. That is, the finishing up would be after, for the tibia, the north portion is gone? Yes. You would have created the resected surface, and then you're going to smooth out the edges with a freehand. So there will be a full resection by the guide alone, by the one guide alone cutting from one side to the other. Yes, it's going to create a resected surface. If there ends up being some still edge pieces left here because the surgeon didn't want to get too close to an edge over there with the tip of the saw, they'll go in and they'll do that perhaps freehand to be able to do that. But the resected surface on which to implant his position is created entirely from a single half-width guide on the opposite side. So just to be clear, the whole bone is cut through, the whole thing is taken out. You're just saying there might be some splinters, some nubs, some edges that stick up, which they're going to go in and sand away, basically. Cut away. Yes. And so we want to make sure that that's very clear, that when the board was talking about complete, because requester is correct. That first came up in the request for rehearing decision. But I want to make sure that I understand your argument, though, which is the conversation we're having with Judge Toronto. So we all agree that this construction limits you to a medial cut that traverses the entire bone. There will be no cutting from the other side that is necessary to finish the job of traversing that entire bone. You're saying there may be some nubs or little sticking-up points, but that the whole thing is already resected such that the bone can be removed. Yes. There might be some additional removal, but that's... You've removed a bone to create the resected surface onto which the implant will be placed. By the single cut coming from one side to the other. Yes. That's our intended construction. That is what we feel the board upheld in upholding the dependent claims under BRI. Of course. There's no substantial evidence on the anticipation stuff. Before you sit down, can you return to where we started about claims 3133, the so-called amended... Let me see if I can just... I thought that the changes in wording that you made were in fact substantive changes, and that those changes, the ones that the board approved, cannot now be entered. Suppose I also thought that under some of the MPEP stuff that we were talking about, the unchanged versions of those claims, which the examiner rejected, which led to your changes, might now be considered by the board. So the original unchanged versions of 3133, etc. Do we need... A, do you care about that? B, do we need to take some action or will that automatically happen because now that December 24th has come and gone under the board's MPEP regulation, it is now the unchanged versions of those claims that are back in play. Do we need to do something? Do you want us to do something? I would like you to affirm the board. I think that when it comes back to the office... That's not an option. So do we dismiss that portion of the appeal or do we vacate the allowance to the extent that the appeal relates to that portion? Or another option, if there's another option? Assuming affirming the board... The dependent claims are allowed as separate claims. We're talking about the amended claims. You're talking about the amended claims. So that you understand and appreciate our arguments, from the very beginning, we said those amendments were not substantive changes. So I'm accepting your hypothetical. That they are substantive changes. They should not be entered. And then you would go to MPEP 2687. Who would go? The examiner would. Without our remanding or something? That's what the examiner will do. And that's why I say... We could just dismiss that portion of the appeal. No. Because of the allowance. You have to vacate the allowance as it pertains to those claims. Well, it'll never issue. Are you positive the PTO will do that? I think we need to vacate the allowance. Thanks for those questions. Well, we would say, Your Honors, that if you're thinking that these claims are not allowed and that they could allow it, we should be given an opportunity then to go back and argue for the construction that we said was the right construction all along. Because we've only ever said, these claims cover that. And the reason is, the art that was overcome, that you would consider in a Markman construction, is Burke. It's that two-sided claim. Okay. That looks exactly the same. I think we need to wrap up. Thank you, Mr. Peterson. Thank you. I appreciate your patience, Your Honor. Mr. Salyers? Thank you, Your Honors. I'll try and be brief. I've got five points. Number one... You have two minutes. I know. I'm going to do a fast talk, I guess. Judge O'Malley, your question about whether the dependent claim would be an allowed amendment, the statute section 1.53J says, no amendment may enlarge the scope of the claims. So that amendment that was done didn't enlarge the scope of the claims. So the non-amended claims aren't changed in their scope. And I think that's the purpose of that statutory provision. Number two, Judge Taranto, your question about partial resection. And the answer was, oh, well, we have this fixation surface that we need to put things on. If you read the claim language, it's actually, you're not putting a fixation surface, it's got to be adjacent to at least one resected surface of the tibia. So the same surface that you only have one of is where this device is being fit on. The cut surface in the wear-in clause is a separate cut and is not part of the process that's in that claim. Third point, I don't know what their claim construction is now. I know what they said in their briefs. In their briefs, the red brief at page four, the patent owner said that the allowed claims require a specific cutting guide placed on one side of the bone to be used to cut into the other side. That's the position they've maintained in the briefing. Now we're getting that it's a complete resection. That's not the argument they made in this appeal. They've changed their position at this hearing. The board's construction, we talked a little bit about that. It's very clear, I think, when you read that page 26 in the record, the board said this is a complete resection. Right, and that's what we have to grapple with. That's what you've got to grapple with. That's what your decision needs to be there. Two last points. Claim 10 in Samuelson has not been spoken of by them in their brief. We briefed it in our brief. Claim 10 in Samuelson says you're laterally extending this member next to the bone. You're putting the cutting guide next to the bone on the lateral side. You're inserting the blade and you're resecting the bone. A complete resection is being disclosed in Samuelson. In that claim, there's none of this prime number stuff. It's a claim that says put it on the side, stick the blade through it and resect the bone. So if you get to the point where this complete resection is your construction, you're toast. You cannot get around the Samuelson issue. Final point, Your Honor, Judge Taranto's question about what do we do with this appeal. You should give guidance to the Patent Office, I think, that there has been no appeal from the denial of the original claims as unamended. The original claims were in the process. They chose not to appeal them. We can't send it back for a redo. This case has been going on for six years. It has to end sometime. And I think it would be a travesty to send it back and let us start over again. That's not our decision to make. Well, I understand that, Your Honor, but you do have appellate jurisdiction and you can state on the record that there was no appeal taken from the unamended claims, Claim 31, as unamended. And I don't think the Board should allow an additional process. We may have to deal with that below. But certainly, they've made an argument about something they didn't appeal about. They made that in their red brief, which was wrong. I mean, I think you can comment on what they said in the red brief. They made the position that, oh, well, since it gets after December 24th, we'll just go back to the original claims and let's talk about the original claims. That's not the way the process is supposed to work. If they wanted the original claims decided, they should have included them in the appeal. They didn't, and they've lost that right in our position, in our view at least. Thank you, Your Honors. I have no further... Thank both counsel. The case is taken under submission.